**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cr-10119-DJC** |
| | ) | |
| **TIMMY HUNT,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                    **September 24, 2021**

## I.     Introduction

Defendant Timmy Hunt ("Hunt") has moved to suppress the GPS data obtained from a GPS electronic monitoring device imposed as a condition of his pretrial release in a pending state case in Suffolk Superior Court.  D. 84.  Having considered the motion (and supporting memorandum and exhibits), D. 84-87, the government's opposition, D. 105-06, Hunt's reply, D. 109, and having heard oral argument on the motion, D. 111, the Court DENIES the motion.

## II.    Findings of Fact

These findings are based upon the record before the Court including the affidavits of Hunt, D. 87, and Special Agent Timothy R. Kenny ("Kenny"), D. 106; D. 1-1, 20-mj-01119-DLC.

### A.     Imposition of GPS Device in State Proceeding

On March 14, 2019, Hunt was arraigned in Suffolk Superior Court and charged with carrying a firearm without a license.  D. 87 ¶ 1; D. 86-1 at 4.  At his arraignment, the Commonwealth requested a cash bail amount of $40,000 and Hunt's counsel requested $10,000

1

based upon Hunt's ability to pay.  D. 105 at 6.  Hunt's counsel asserted that Hunt had "no problem" with being put "on a GPS as well as some kind of monitoring."  Id. at 7.  The Superior Court set cash bail at $15,000 and ordered GPS monitoring and home confinement when bail was posted. Id.; D. 109 at 2.

Hunt remained in custody until July 1, 2019 when he posted the $15,000 bail.  D. 87 ¶¶ 1, 2.  Hunt met with a Probation employee, outside of court and without counsel present, who told him he would be released on house arrest with a GPS monitoring bracelet.  Id.  The Probation employee gave Hunt an Order of Pretrial Conditions of Release ("Order") form to sign.  Id. ¶¶ 2-3; D. 87-1 at 2.  The form, in relevant part, noted that home confinement was one of the conditions of his release and that he was to comply with electronic monitoring and "obey all local, state, and federal laws and court orders."  D. 87-1 at 2.  Hunt signed the Order below the statement that he "read and understood these conditions."  Id.  The second page of the Order outlined Hunt's conditions of GPS supervision, which required that he not tamper, interfere or otherwise damage or destroy the GPS device and keep it charged at all times.  Id. at 3.  The Order also informed Hunt, in relevant part, that:

> You are hereby placed on GPS by this Court.  Unless you are excused by your probation officer, you must appear in court on the GPS supervision end date indicated, at which time a report of your GPS progress will be made.  If you fail to appear on that date or any other date required, a warrant may be issued for your arrest. Coordinates and other data related to your physical location while on GPS are recorded and may be shared with the court, probation, parole, attorneys and law enforcement.  Data generated by GPS equipment assigned to you is not private and confidential.

Id.  Hunt also signed the second page, affirming that he "read and underst[ood] the above conditions of GPS supervision and I agree to observe them."  Id.

Hunt's conditions of release were later addressed in at least two hearings.  First, on August 20, 2019, Hunt appeared, apparently without counsel, to request a modification to his curfew to facilitate his work schedule.  D. 105 at 7–8; D. 86-1 at 7.  Hunt stated that "being on a bracelet is not an issue."  D. 105 at 7-8.  At an October 4, 2019 hearing, Hunt appeared with counsel to request further modification to his curfew so that he could work certain overnight shifts.  D. 105 at 8; D. 86-1 at 9; D. 87 ¶ 4.  Hunt's counsel relied upon the fact that Hunt was traceable by GPS to support modification of the curfew, stating that "[a]nybody that wants to know where he is, look at his GPS points."  Id.  On both occasions, the Superior Court modified Hunt's curfew to accommodate his employment schedule.  Id.

### B.     Investigation into Hunt and Brewster

The FBI had been investigating alleged drug trafficking by Hunt and Trevel Brewster ("Brewster") since approximately February 2020.  D. 1-1, 20-mj-01119-DLC, ¶ 9.  A confidential witness ("CW") working with the FBI identified Brewster as dealing cocaine base.  Id. ¶ 11.  Further investigation suggested that Hunt was Brewster's supplier.  Id. ¶ 16.  The FBI arranged controlled purchases between the CW and Brewster on or about February 26, 2020, and March 2, 2020.  Id. ¶¶ 18–19, 27–28.  On both occasions, agents observed Brewster enter the CW's vehicle to collect money from the CW, exit the CW's vehicle, enter a white sedan, and then return to the CW's vehicle with a plastic bag containing suspected crack cocaine.  Id. ¶¶ 21–22, 30–34.  The bags' contents tested positive for cocaine base.  Id.  ¶¶ 24, 36.  Agents also identified the white sedan observed at the controlled transactions as a Chevrolet Malibu rented by Hunt from Avis Budget Group on February 26, 2020 and returned on March 21, 2020.  Id. ¶ 33; D. 106 ¶ 3.

C.      **FBI Obtains GPS Data**

Kenny learned that Hunt was on pretrial release related to his pending criminal matter in Superior Court, which included GPS monitoring as a condition of release.  D. 106 ¶ 7.  On May 8, 2020, Kenny contacted the Massachusetts Probation Service to request GPS monitoring points for Hunt on February 26, 2020 between 3:00 p.m. and 4:30 p.m., and on March 2, 2020 between 4:00 p.m. and 5:30 p.m.  Id. ¶ 8.  On May 9, 2020, Kenny received two maps responsive to that request.  Id.  Later that day, Kenny requested GPS monitoring points for Hunt on the same days as the initial request, but for more specific time windows:  February 26 from 3:40 p.m. to 4:00 p.m. and March 2 from 4:40 p.m. to 5:00 pm.  Id. ¶ 9.  Kenny did not obtain a warrant to access Hunt's historical GPS data.  See id.; D. 85 at 11.  The government asserts that the GPS data places Hunt at or near the location of the CW's controlled buys with Brewster.  D. 85 at 2, 6.

D.      **Indictment**

A federal grand jury indicted Hunt and Brewster on June 23, 2020 with two counts of distribution and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy for same, 21 U.S.C. §§ 846.  D. 1.

III.    **Discussion**

A.      **Neither Imposition of the GPS Bracelet nor the Gathering or Use of Limited Data Here Constituted a Search under the Fourth Amendment**

The Fourth Amendment protects an individual's right to be free from an unreasonable search or seizure and a "search" need not be a physical intrusion, but may be a violation of a person's reasonable of privacy, Smith v. Maryland, 442 U.S. 735, 739-40 (1979), as Hunt alleges here in GPS location monitoring and the historical data regarding same.  D. 85 at 6-7.  A person has a reasonable expectation of privacy when he has a subjective expectation of privacy and that expectation is one that "society is prepared to recognize as reasonable."  Smith, 442 U.S. at 740;

4

see United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009).  A defendant bears the burden of establishing a reasonable expectation of privacy regarding the items searched or seized.  United States v. Lipscom, 539 F.3d 32, 35-36 (1st Cir. 2008).

Neither the gathering nor the use of the GPS location data constitutes a search since Hunt had no reasonable expectation of privacy in either.  To the extent that Hunt contends that the attachment of the GPS device as part of his pretrial conditions was a search, he has shown no reasonable expectation of privacy as to same and no case law supporting this contention.  Such monitoring is routinely a part of pretrial release in state court (as it was in this case) and in federal court.  See 18 U.S.C. 3142(c)(1)(B)(xiv).  Also, as discussed more fully below, Hunt also consented to same as part of his pretrial release and implicitly affirmed that assent in his motions to alter the conditions of his release to accommodate his work schedule.

As to the gathering and use of the historical data,  Hunt also has not shown a reasonable expectation of privacy.  Although Hunt expresses some subjective expectation of privacy in same, see D. 87 ¶ 3, the Court does not conclude that such expectation is one that can be recognized as reasonable, particularly on this record where Hunt consented to the GPS monitoring and even to the possibility that GPS data could be shared with law enforcement.  D. 105 at 16–17, D. 87-1 at 3.  The case law upon which Hunt relies does not compel a different outcome.  Hunt points primarily to Carpenter v. United States, __ U.S. __, 138 S. Ct. 2206 (2018).  In Carpenter, the Supreme Court ruled that the seizure of cell site location information in that case constituted a seizure, but it make clear that its holding was limited to the greater scope of data seized there, noting that "[i]t is sufficient for our purposes today to hold that accessing seven days of [cell site location information] constitutes a Fourth Amendment search."  Id. at 2217 n.3.  The court expressly did not reach "whether there is a limited period for which the [g]overnment may obtain

an individual's historical [cell site location information] free from Fourth Amendment scrutiny," id., which is the situation presented here.  That is, the holding in Carpenter addressed to seven days of cell site location information does not mean that the seizure of a far more limited scope of location date (1.5 hours of GPS data for each of two days) constituted a search.

Accordingly, as an initial matter, the Court concludes that the imposition of the GPS monitoring as part of Hunt's pretrial release and the gathering and limited use of location data here does not constitute a search under the Fourth Amendment.

### B.   Consent to GPS Monitoring

Even assuming *arguendo*, that the GPS monitoring and gathering and use of location data from same was a search, it was a reasonable one given Hunt's consent and the scope of such search. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  Riley v. California, 573 U.S. 373, 382 (2014).  "Consent is a well-recognized exception" to the warrant requirement.  United States v. Coombs, 857 F.3d 439, 448 (1st Cir. 2017).  "The validity of a defendant's consent must be gauged under the totality of the circumstances," which requires the Court to "look for evidence of coercion, duress, confusion, and the like."  Coombs, 857 F.3d at 448 (citations omitted).  Moreover, "[a] consensual search may not exceed the scope of the consent given," the standard for which, "is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange . . . ." United States v. Turner, 169 F.3d 84, 87 (1st Cir. 1999) (internal citation omitted).

On this record, the Court concludes that Hunt consented to the GPS monitoring and gathering and use of data from same.  The totality of circumstances regarding his consent begins with his March 2019 arraignment.  During that hearing, in Hunt's presence and on his behalf, his counsel pressed for lower bail than the $40,000 bail that the government sought, arguing in part

6

that Hunt would consent to GPS or other monitoring.  D. 105 at 5-6.  The Court set cash bail at $15,000 with conditions of release including GPS monitoring and home confinement.  Id. at 6. Upon making bail on July 1, 2019, Hunt signed the Order acknowledging that the GPS data was not private and confidential, that such data would be recorded and may be shared with, among others, law enforcement.  D. 87-1 at 2-3.   Court events after his release also reflect Hunt's consent to GPS monitoring.  On at least two occasions, August 20, 2019 and October 4, 2019 (the latter of which was with Hunt's counsel), Hunt urged the Court to adjust his curfew to accommodate his work hours, relying upon the fact that the continued GPS monitoring would mitigate any concerns about his requests.  D. 86-1 at 7-9.  Hunt contends that he "did not read the fine print on the form," and that he did not understand that the GPS data could be used "for any purposes other than" that he stay at home and appear in court as required.  D. 87 ¶ 3.  Considering all of the circumstances here, United States v. Twomey, 884 F.2d 46, 51 (1st Cir. 1989), however, Hunt's consent was freely and voluntarily given to the GPS monitoring and data from same.

First, Hunt offered his agreement to such monitoring as part of his (counseled) argument to the Court for release, which was a rational strategy given the Commonwealth's position about higher bail, the seriousness of the state charge and Hunt's extensive criminal history which meant he faced a sentence as an armed career criminal.  D. 105 at 6.  Second, Hunt was advised of the GPS condition and the possibility that GPS data would be shared with law enforcement.  Third, his subsequent requests to modify his curfew, including one through counsel, reflected continued consent to be subjected to this condition.  Even considering the collection of location data and sharing the 1.5 hour each on two days from it separately from the imposition of the GPS device, Hunt consented to same.  As a means of mitigating risk (and appealing to the state court to impose a lower bail), the imposition of the GPS device had no significance unless the Court and probation

would have access to it to monitor Hunt's whereabouts. Law enforcement access to it was similarly granted with Hunt's signing of the Order and serves a similar purpose where part of the conditions of release included that he obey all local, state and federal laws. D. 87-1 at 2.

Moreover, to the extent that Hunt contends that signing the Order "does not necessarily establish free and voluntary consent" because the alternative to accepting those conditions (which included the GPS monitoring) was to remain in pretrial custody, D. 85 at 9, this Court rejects this argument as other Courts have done. See, e.g., United States v. Clay, No. 4:12-CR-735-03, 2013 WL 4483405, at *5 (S.D. Tex. May 6, 2013). To the extent that Hunt relies upon Commonwealth v. Norman, 484 Mass. 330 (2020) to argue that his consent was not freely and voluntarily given, unlike that case where the "only evidence of consent" was the defendant's signature of the order regarding same, id., there is additional evidence bearing upon his consent here. As discussed above, Hunt offered GPS monitoring as part of his release plan and when that was successful, he later cited GPS monitoring in several petitions to change his curfew. It is the totality of these circumstances which reflect the free and voluntary nature of his consent here.

### C.    **Reasonableness of the Search**

Moreover, in the context of the circumstances here, the scope of the search was reasonable. The reasonableness of a Fourth Amendment search is determined by the totality of the circumstances, "assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy, and, on the other, the degree to which it is needed for the promotion of legitimate government interests." Samson v. California, 547 U.S. 843, 848 (2006) (quoting United States v. Knights, 534 U.S. 112, 118 (2001)). Hunt, as a defendant on pretrial release, has some diminished expectation of privacy, see, e.g., Norris v. Premier Integrity Sols., Inc., 641 F.3d 695, 699 (6th Cir. 2011), even if that expectation is not nil and is greater than a defendant after

conviction.  See United States v. Weikert, 504 F.3d 1, 11 (1st Cir. 2007) (noted that a post-conviction defendant had a "substantially diminished expectation of privacy"); Norman, 484 Mass. at 334-35.

Moreover, there is a legitimate government interest in the imposition of a GPS device and the location data from it.  That interest is not just to ensure a defendant's appearance in court, but prevent violation of conditions of pretrial release which here included the commission of any other crime.  Although Hunt points to the absence of deterrence of future crime as a purpose of the state bail statute, D. 109 at 7 (citing Norman, 484 Mass. at 336-37 discussing Mass. Gen. L. c. 276 § 58), obeying the law was an express condition of Hunt's pretrial release, D. 105 at 17, (not unusual for a condition for pretrial release, but also particularly appropriate given Hunt's criminal record and armed career criminal status), and so there was a legitimate governmental interest in preventing same.

Accordingly, the Court concludes that, even assuming the GPS monitoring and gathering and use of its location data was a search, it was reasonable in scope, and there was no Fourth Amendment violation here.

### D.   Good Faith Exception

Moreover, even assuming *arguendo* that there had been a search here in violation of the Fourth Amendment, suppression of the GPS location would not be warranted.  The Leon exception to suppression of the fruits of unconstitutional searches centers on a law enforcement officer's reasonable reliance on warrants, see United States v. Leon, 468 U.S. 897, 922 (1984), statutes, see Illinois v. Krull, 480 U.S. 340, 353 (1987), or settled appellate precedent that courts later invalidate, see Davis v. United States, 564 U.S. 229, 240 (2011).  Whether the rule applies generally depends upon the level of culpability of the police misconduct.  See Davis, 564 U.S. at

238.  "When the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful," or "when their conduct involves only simple, 'isolated' negligence," the deterrence rationale is diminished.  Id.

The Court agrees with the government's contention that the exclusionary rule should not apply here where the agents "acted in an objectively reasonable manner, relying on the absence of any federal law holding that a warrant must be obtained in order to obtain [1.5 hours of GPS data for two days] from a pretrial defendant's GPS bracelet, where there is probable cause that such data constitutes evidence of a crime."  D. 105 at 20.  Contrary to Hunt's contention, D. 109 at 15, this is true in light of the Supreme Court's ruling in Carpenter, given the limits of that decision as discussed above.   Deterrence of law enforcement conduct is not warranted here where they acted upon a reasonably held, good faith belief that their request for limited GPS data from state probation about an individual on pretrial release whom they had probable cause to believe was involved in another crime was lawful.

## IV.    Conclusion

For the foregoing reasons, the Court DENIES Hunt's motion to suppress.  D. 84.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
